# EXHIBIT A

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1    Plaintiffs Palisades Capital Realty Advisors LLC ("Palisades") and Joaquin

2  Charles de Monet (collectively "Plaintiffs"), by and through their undersigned

3  attorneys, hereby pray to this honorable Court for relief based on the following:

4                                INTRODUCTION

5      1.     Defendant First Capital Real Estate Trust Incorporated ("First Capital")

6  and Defendant Presidential Realty Corporation ("Presidential") needed an

7  experienced real estate advisor to assist them in: (1) closing a complex transaction

8  involving the sale of real estate interests by First Capital to Presidential; (2) building

9  out Presidential by, among other things, assembling a team that would take over

10  control of Presidential, raise funds for Presidential, rebrand the new Presidential,

11  prepare to sell Palisades' office portfolio to Presidential, develop a pipeline of

12  opportunities; and (3) after the closing, managing the restructured Presidential.

13  First Capital and Presidential turned to Palisades and de Monet.  As the former

14  President and Chief Executive Officer of Arden Realty, Inc, a major REIT that was

15  sold to GE Real Estate, de Monet had the expertise and experience.

16      2.     First Capital and Presidential agreed that Palisades would receive

17  payment for salaries for its consulting team and other expenses.  Then, upon transfer

18  of interests in a specific property in Sacramento, California from First Capital to

19  Presidential, Palisades would be acquired by Presidential in exchange for

20  approximately $31.6 million in stock and salary packages to de Monet and his

21  management team.

22      3.     Palisades diligently performed the agreed-upon services.  Based on

23  Palisades' work, the transaction was nearly ready to close.  Suddenly—in bad faith

24  and without any justification—First Capital and Presidential replaced de Monet and

25  Palisades with Defendant Serge Kasarda and his company, Defendant Seventieth

26  Street Asset Management LLC.  They proceeded to close the transaction, including

27  transfer of the property in Sacramento, reaping substantial benefits for themselves.

28  First Capital and Presidential failed to compensate Palisades for hundreds of

1  thousands of dollars in expenses it had incurred. More important, First Capital and
2  Presidential deprived Plaintiffs of the approximately $31.6 million in stock grants
3  and salary packages they had been promised to receive after the closing of the
4  transaction.

<u>PARTIES</u>

6      4.      Plaintiff Palisades Capital Realty Advisors LLC is a California limited
7  liability company with its principal place of business in Los Angeles, California.

8      5.      Plaintiff Joaquin Charles de Monet is an individual who resides in Los
9  Angeles, California. Mr. de Monet runs Palisades Capital Realty Advisors LLC.

10     6.      On information and belief, Defendant Presidential Realty Corporation is
11  a Delaware corporation with its principal place of business in New York, New York.

12     7.      On information and belief, Defendant First Capital Real Estate Trust
13  Incorporated is a Maryland corporation with its principal place of business in New
14  York, New York.

15     8.      On information and belief, Defendant Suneet Singal is an individual
16  who resides in El Dorado Hills, California. He is the CEO of First Capital.

17     9.      On information and belief, Defendant Seventieth Street Asset
18  Management LLC is a New York limited liability company with its principal place of
19  business in Yonkers, New York.

20     10.     On information and belief, Defendant Serge Kasarda is an individual
21  who resides in Dobbs Ferry, New York. He is the Manager of Seventieth Street Asset
22  Management LLC.

23     11.     Plaintiffs are unaware of the true names and capacities of defendants
24  sued herein as DOES 1 through 20, inclusive, and therefore sues these defendants by
25  such fictitious names. Plaintiffs will amend this complaint to allege their true names
26  and capacities when ascertained. Plaintiffs are informed and believe and therefore
27  allege that each of the fictitiously named defendants is responsible in some manner
28  for the occurrences herein alleged, and Plaintiffs' injuries as herein alleged were

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  proximately caused by such defendants. These fictitiously named defendants along
2  with the defendants named above, are herein referred to collectively as "Defendants."

3      12.    Plaintiffs are informed and believe that the Defendants conspired and
4  acted in concert with each other to commit the wrongs against Plaintiffs alleged
5  herein, and in doing so were at all relevant times the agents, servants, employees,
6  principals, joint venturers, alter egos, and/or partners of each other. Plaintiffs are
7  further informed and believe, and thereon allege, that in doing the things alleged
8  herein, each of the Defendants were acting within the scope of authority conferred
9  upon that Defendant by the consent, approval, or ratification of the other
10 Defendants, whether said authority was actual or apparent.

11
12                    JURISDICTION AND VENUE
13     13.    Venue in the Superior Court for the County of Los Angeles is proper
14 pursuant to California Code of Civil Procedure Section 395(a) as the contracts
15 entered into by the parties, described in greater detail below, were to be performed in
16 Los Angeles County, California.
17     14.    This Court has jurisdiction over Defendants under California's Long
18 Arm Statute, California Code of Civil Procedure Section 410.10, as Defendants have
19 purposefully availed themselves of doing business in the state; the controversy at
20 issue arises from Defendants' forum-related contacts; and assertion of jurisdiction is
21 reasonable under these circumstances.
22                       BACKGROUND FACTS
23 The Transaction
24     15.    Palisades is an international investment management and advisory
25 firm, owned and managed by its founder, de Monet. De Monet is a highly
26 experienced real estate advisor. Among other things, he was the former President
27 and Chief Executive Officer of Arden Realty, Inc., a large real estate investment trust
28 (REIT) that was acquired by GE Real Estate in 2006.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

16.   First Capital is a publicly registered, non-traded REIT.  On information and belief, in 2016, First Capital owned interests in a portfolio of 31 assets including land development, luxury resorts, multifamily, gas stations, hotels, medical offices, transitional housing, retail, and business offices.

17.   In February 2016, First Capital acquired a 92% ownership interest in the Township 9 property in Sacramento, California.  The Township 9 property is a large mixed-use development site with a complex, multi-year plan requiring an estimated $800 million of capital to fully build out and develop.  A major component of the underlying transaction involved First Capital selling its interests in Township 9 to Presidential, which would then develop the land.

18.   First Capital was also set to assign to Presidential its rights in the "Evergreen" properties—eight residential development properties in Northern California comprised of 2,026 single-family residential lots.

19.   The underlying transaction also contemplated Palisades selling its approximately $105 million office portfolio to Presidential.

20.   First Capital was (and still is) delinquent with respect to its required filings with the Securities Exchange Commission, having failed to file financial statements since June 2015.

21.   In addition, because First Capital is a non-traded REIT, its investors lack the ability to freely trade securities.  By selling First Capital's assets in exchange for stock or operating partnership units that could be converted to stock, First Capital's investors would gain the ability to freely transact in those securities. Accordingly, First Capital decided to sell its ownership interests in certain real properties, including Township 9, to another REIT that would then list on a national stock exchange.

22.   In the summer of 2016, First Capital identified Presidential as a candidate to acquire the assets.

23.    Presidential is a small REIT that trades over the counter.  As of 2016, it owned only one small property.

24.    The proposed transaction between First Capital and Presidential was complex and, given First Capital's circumstances, presented several structural and legal challenges.  For example, because First Capital was delinquent in its SEC filings, it could not simply sell all of its assets or merge with Presidential.  In addition, the loan secured by the Township 9 property was in default in the amount of $42 million, so the property was at risk of foreclosure.

25.    To assist with the complex transaction, First Capital and Presidential needed an experienced advisor, so they turned to Palisades.  Under the agreements entered into between First Capital, Palisades, and Presidential, Palisades was to provide services to assist in closing the transaction.  After the sale of the Township 9 interests to Presidential, Palisades would be acquired by Presidential and de Monet and his team would assume management of Presidential.

The Consulting Agreement

26.    As of December 8, 2016, Palisades and Presidential entered into a Consulting Agreement.

27.    In the Consulting Agreement, Palisades agreed to, among other things, assist Presidential with the acquisition and integration of the First Capital properties, prepare a private placement memorandum to raise preferred stock, list Presidential on a national stock exchange, and provide services relating to asset growth plans for Presidential and raising of additional capital.

28.    Presidential agreed to pay Palisades $100,000 per month on the first of each month to cover salaries of Palisades employees and consultants.

29.    Presidential also agreed to reimburse Palisades for other reasonable and necessary expenses.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400  •  Facsimile: 310.746.4499

1    The Memorandum of Understanding ("MOU")

2        30.    On or about December 9, 2016, First Capital and Palisades executed a

3    Memorandum of Understanding ("MOU").

4        31.    Under the MOU, Palisades agreed to provide advisory services relating

5    to negotiating, documenting, and closing the transaction.  In addition, the MOU

6    provided that Palisades would assist in the acquisition and disposition of certain

7    assets and a national listing for Presidential.  The MOU also provided that Palisades

8    would sell its office portfolio to Presidential.

9        32.    First Capital agreed to pay Palisades, within two business days of

10   execution of the MOU, a $200,000 retainer, to be applied to the actual and reasonable

11   fees and costs related to the advisory services to be provided by Palisades, including

12   salaries and reimbursement of business-related expenses.

13       33.    The parties agreed to "work together, employing good faith,

14   commercially reasonable efforts to endeavor to accomplish the intentions and mutual

15   objections outlined in this MOU."  The parties further agreed that "[n]either party

16   shall take or omit to take any action which would circumvent the other or deprive the

17   other of the benefits contemplated by this MOU or the Transaction[.]"

18       34.    The parties agreed that, upon transfer of 66% of First Capital's interests

19   in Township 9 to Presidential pursuant to the Interest Contribution Agreement

20   (which is discussed in ¶¶ 39-42 below), (a) de Monet would lead Presidential as

21   Chairman and CEO and build out his leadership team with full-time personnel; (b)

22   Presidential would execute employment agreements with de Monet and certain other

23   Palisades staff and executives, with market compensation in the estimated amounts

24   set forth in the MOU (including a salary to de Monet in the amount of $400,000 per

25   year for four years, until gross assets reached $500,000,000, at which point the salary

26   could be higher); and (c) Presidential would provide additional compensation to

27   Palisades in the form of stock grants, including an initial grant of $5 million, an

28

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1   additional $1.25 million in each of the first four years, and additional grants totaling
2   up to $20 million from year 1 through year 4 tied to performance measures.

3       35.    In other words, de Monet and Palisades were to receive approximately
4   $31,600,000 million in consideration, including $30 million in stock and $1.6 million
5   in salary over four years.  That amount reflected the complexity, difficulty, and skill
6   required to close the transaction and for Plaintiffs to assume management of
7   Presidential and successfully manage its newly acquired assets.

8       36.    The parties agreed that if, despite their good faith, commercially
9   reasonable efforts, the transaction contemplated by the MOU was not substantially
10  completed by August 30, 2017, First Capital would pay Palisades any amounts due
11  and a breakup fee of $500,000 to compensate Palisades for business opportunities it
12  has lost since September 30, 2016.

13      37.    The MOU also provided that if the MOU is terminated as a result of any
14  shareholder action by the Class A shareholders of Presidential, then liquidated
15  damages of $1 million would be paid to Palisades.

16      38.    Presidential manifested its consent to the MOU, and therefore became a
17  party to the MOU, through both its words and its conduct.  Presidential's principals
18  repeatedly affirmed the terms of the MOU, both orally and in writing.  For instance,
19  Presidential's principals repeatedly stated that Plaintiffs would take over
20  Presidential.  In addition, Presidential accepted all of the benefits of Plaintiffs' work
21  completed pursuant to the MOU, such as creating the transition team to take over
22  management of Presidential, raising funds for Presidential, rebranding the new
23  Presidential, and creating a new pipeline of opportunities for the new Presidential.
24  Interest Contribution Agreement between First Capital and Presidential

25      39.    On or about December 16, 2016, First Capital and Presidential entered
26  into an "Interest Contribution Agreement."  The Interest Contribution Agreement
27  provided, among other things, that First Capital would sell ownership interests in
28  certain real property, including Township 9, to Presidential.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

40.     The Interest Contribution Agreement provided that First Capital would pay Presidential $800,000 to be used, among other things, for compensation and reimbursement of expenses for Palisades for a period of approximately 150 days.

41.     Presidential also agreed that, with the $800,000 in funds, it "shall timely pay Nelson Mullins for their professional services and costs related to the Regulation D offering for Presidential preferred shares to be issued and for salaries and reimbursement of costs for Palisades Capital."

42.     Pursuant to the agreement, First Capital paid the $800,000 to Presidential.

Performance Under the MOU and Consulting Agreement

43.     After execution of the agreements, First Capital used Palisades' name and reputation to gain credibility and confidence of employees, investors, the investment management/broker-dealer community, and the real estate market. Among other things, First Capital used Palisades' name and reputation in internal communications, marketing materials, industry conferences, press releases, 8-Ks filed with the SEC, and investor letters.

44.     For instance, in an 8-K dated December 9, 2016, First Capital announced the signing of its MOU with Palisades.  It trumpeted the fact that Palisades is "an international investment management and advisory firm serving private, high net worth clients and institutions and joint venture partners in the U.S. and Latin America . . . led by founder and Managing Principal Joaquin de Monet, formerly from Arden Realty, Inc."

45.     In an 8-K dated December 16, 2016, First Capital announced that the Interest Contribution Agreement contemplates that "Presidential will become internally managed and led by Joaquin de Monet, the founder of Palisades."

46.     Similarly, in a letter from Suneet Singal, CEO of First Capital, to stockholders dated on or around January 30, 2017, Mr. Singal stated, "The Agreement contemplates that Presidential will become internally managed and led

1    by Joaquin de Monet, the founder of Palisades Capital Realty Advisors.  Mr. de

2    Monet is the former President and Chief Executive Officer of Arden Realty, Inc., a

3    large publicly-traded landlord in Southern California that was acquired by GE Real

4    Estate" in 2006 and sold to Blackstone in 2015.

5          47.    In accordance with the MOU and the Consulting Agreement, Plaintiffs

6    invested time and money in the transaction.

7          48.    Among other things, Palisades assembled a seasoned, experienced, and

8    skilled team to close the transaction and assume control of Presidential.

9          49.    Plaintiffs also assembled a board of directors for Presidential.

10         50.    Plaintiffs retained and paid consultants, law firms (including Nelson

11   Mullins and Ellenoff Grossman & Schole) and others to provide the services.

12         51.    By early March 2017, Plaintiffs had already completed most of the scope

13   of work outlined in the MOU.  Several times, First Capital said that the transaction

14   was on the verge of closing.

15         52.    Under the Consulting Agreement, Palisades was due approximately

16   $156,497.67 per month, including a fixed amount of $100,000 due on the first of each

17   month, and approximately $56,497.67 in other expenses.

18         53.    For the period from January to April 1, 2017, therefore, Presidential

19   should have paid Palisades $569,493.01 pursuant to the Consulting Agreement.

20         54.    In February 2017, Presidential did pay $200,000 to Palisades and it also

21   directly paid the initial retainers for counsel engaged by Palisades.

22         55.    After February 2017, however, Presidential failed to pay any

23   compensation to Palisades, leaving an unpaid balance of $369,493.01.

24         56.    In addition, Presidential failed to reimburse Palisades for legal expenses

25   incurred on the transaction, including (a) a bill for work through March 3, 2017, from

26   Nelson Mullins for legal fees and costs related to the Regulation D offering for

27   Presidential preferred shares, in the amount of $46,318.95; (b) a bill from Ellenoff

28   Grossman & Schole for legal fees, in the amount of $69,277.25; and (c) a bill from

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  CohnReznick for $7,800 for tax and accounting services; and (d) expenses due to third
2  party survey and title service companies, in the amount of approximately $10,000.

3       57.    As of April 1, 2017, therefore, under the Consulting Agreement,
4  Presidential owed Palisades no less than $502,889.21.

5  First Capital and Presidential Cut Palisades Out of the Deal

6       58.    After signing the Interest Contribution Agreement, First Capital failed
7  to obtain a loan extension or a refinance of the $42 million loan in default on the
8  Township 9 property.  Presidential expressed concerns about taking on a defaulted
9  loan.  As part of the effort to close the transaction, Presidential and First Capital
10  discussed ways to deal with the defaulted loan.

11       59.    As consultants, Plaintiffs facilitated these conversations.  First Capital
12  and Palisades appeared to be in general agreement on an approach to resolve the
13  Township 9 defaulted loan.  However, First Capital's counsel was immersed in other
14  matters.  Palisades, therefore, took the lead in drafting an amendment to the Interest
15  Contribution Agreement to address the Township 9 issue.

16       60.    By March 2017, Palisades had invested months of work in the
17  transaction.  Most of the work had been completed and the transaction was nearly
18  ready to close.  Suddenly, without any justification, First Capital and Presidential
19  jettisoned de Monet and Palisades and replaced them with a new consultant, Serge
20  Kasarda and his company, Seventieth Street Asset Management LLC ("Seventieth
21  Street").

22       61.    On or about March 31, 2017, after replacing Palisades, First Capital and
23  Presidential closed on the transaction, including the transfer of 66% of First Capital's
24  interests in Township 9 to Presidential.

25       62.    It was with the benefit of Plaintiffs' expertise, knowledge, experience,
26  and hard work that First Capital and Presidential closed the transaction, resulting in
27  substantial monetary benefits to those companies.

28

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400  •  Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

63. Under the MOU, upon transfer of First Capital's interests in Township 9, Palisades and de Monet were to assume management of Presidential and receive $31.6 million in stock grants and salary over the next four years. That did not happen. Due to Presidential and First Capital's bad faith actions, Palisades was deprived of this consideration that it had been promised.

64. When pressed by Palisades for an explanation of why it was shut out of the deal and replaced with Kasarda and Seventieth Street, First Capital accused Palisades of "re-trading" the underlying deal, and acting against First Capital's interests by presenting the proposed amendment to the Interest Contribution Agreement.

65. First Capital's proffered excuse for cutting out Palisades and de Monet was demonstrably false. In an 8-K filed on April 3, 2017, First Capital disclosed that, in connection with the closing of the transaction, it and Presidential had entered into a Second Amendment to the Interest Contribution Agreement. The Second Amendment contained essentially the same solution to the defaulted loan issue that Presidential, First Capital, and Palisades had discussed, and that First Capital had portrayed as "retrading" by Palisades.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT (MOU)

(Against First Capital, Presidential, and Does 1-20)

66. Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of paragraphs 1-65.

67. On or about December 9, 2016, Palisades, First Capital, and Presidential entered into the MOU.

68. First Capital, Presidential, and Palisades agreed that, upon transfer of 66% of the Township 9 Ownership entity interests owned by First Capital to Presidential, (a) de Monet would lead Presidential as Chairman and CEO and build out his leadership team with full-time personnel; (b) Presidential would execute employment agreements with de Monet and certain other Palisades staff and

1  executives, with market compensation in the estimated amounts set forth in the
2  MOU (including a salary to de Monet in the amount of $400,000 per year for four
3  years, until gross assets reached $500,000,000 at which point the salary could be
4  higher); and (c) Presidential would provide additional compensation to Plaintiffs in
5  the form of stock grants, including an initial grant of $5 million, an additional $1.25
6  million in each of the first four years, and additional grants totaling up to $20 million
7  from year 1 through year 4 tied to performance measures.

8       69.   In other words, de Monet and Palisades were to receive approximately
9  $31,600,000 million in compensation including salary and stock grants over four
10 years. That amount reflected the complexity, difficulty, and skill required to close
11 the transaction and for Plaintiffs to assume management of Presidential and
12 successfully manage its newly acquired assets.

13      70.   Pursuant to the MOU, Plaintiffs provided services to First Capital and
14 Presidential. In reliance on the agreement, Plaintiffs invested enormous amounts of
15 time and money into the transaction and did not pursue other business opportunities
16 in preparation to sell Palisades to Presidential upon close of the transaction. Among
17 other things, Plaintiffs retained and paid consultants, law firms (including Nelson
18 Mullins) and others to provide the services.

19      71.   By early March 2017, Plaintiffs had already completed most of the scope
20 of work outlined in the MOU. Plaintiffs had performed all obligations they were
21 required to perform, except those that had been excused.

22      72.   First Capital and Presidential breached the MOU. Although First
23 Capital transferred the interests in Township 9 to Presidential, Presidential did not
24 offer employment agreements to de Monet and the other members of the Palisades
25 management team. Nor did Presidential issue stock to Palisades. Instead, First
26 Capital and Presidential replaced de Monet and Palisades with Serge Kasarda and
27 Seventieth Street Asset Management LLC.

28

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 · Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1     73.    As a result of First Capital and Presidential's wrongful acts, Plaintiffs

2 have been damaged in an amount of no less than $31,600,000 plus prejudgment

3 interest.

4     SECOND CAUSE OF ACTION – BREACH OF CONTRACT (CONSULTING

5     AGREEMENT)

6     (Against Presidential and Does 1-20)

7     74.    Plaintiffs repeat, reallege, and incorporate by reference, as if fully set

8 forth herein, the allegations of paragraphs 1-65.

9     75.    On or about December 8, 2016, Palisades and Presidential entered into

10 the Consulting Agreement.

11     76.    Presidential agreed to pay Palisades $100,000 per month on the first of

12 each month. Presidential also agreed to reimburse Palisades for reasonable and

13 necessary expenses.

14     77.    Pursuant to the Consulting Agreement, Plaintiffs provided services to

15 Presidential. In reliance on the agreement, Plaintiffs invested enormous amounts of

16 time and money into the transaction and did not pursue other business opportunities

17 in preparation to sell Palisades to Presidential upon close of the transaction. Among

18 other things, Plaintiffs retained and paid consultants, law firms (including Nelson

19 Mullins) and others to provide the services. Plaintiffs performed or substantially

20 performed under the Consulting Agreement.

21     78.    Presidential has refused to pay amounts due under the Consulting

22 Agreement.

23     79.    As a result of Presidential's wrongful acts, Plaintiffs have been damaged

24 in an amount of no less than $502,889.21 plus prejudgment interest.

25 / / /

26 / / /

27 / / /

28 / / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 · Facsimile: 310.746.4499

1  THIRD CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD

2  FAITH AND FAIR DEALING (MOU)

3  (Against First Capital, Presidential, and Does 1-20)

4  80.  Plaintiffs repeat, reallege, and incorporate by reference, as if fully set

5  forth herein, the allegations of paragraphs 1-65.

6  81.  On or about December 9, 2016, Palisades, First Capital, and

7  Presidential entered into the MOU.  Every contract imposes the duty of good faith

8  and fair dealing upon the parties in performance and enforcement of the contract.

9  82.  First Capital and Presidential replaced de Monet and Palisades with

10  Serge Kasarda and Seventieth Street Asset Management LLC.  First Capital and

11  Presidential's replacement of Palisades with Mr. Kasarda and Seventieth Street

12  Asset Management LLC was in bad faith, and constitutes a breach of the implied

13  covenant of good faith and fair dealing by denying de Monet and Palisades the

14  benefits to which they are entitled under the MOU.

15  83.  First Capital and Presidential's breach of the covenant of good faith and

16  fair dealing has proximately and directly caused damages to Plaintiffs in an amount

17  to be proven at trial.

18  FOURTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF

19  GOOD FAITH AND FAIR DEALING (CONSULTING AGREEMENT)

20  (Against Presidential and Does 1-20)

21  84.  Plaintiffs repeat, reallege, and incorporate by reference, as if fully set

22  forth herein, the allegations of paragraphs 1-65.

23  85.  As of December 8, 2016, Palisades and Presidential entered into the

24  Consulting Agreement.  Every contract imposes the duty of good faith and fair

25  dealing upon the parties in performance and enforcement of the contract.

26  86.  Presidential's replacement of de Monet and Palisades with Mr. Kasarda

27  and Seventieth Street Asset Management LLC, respectively, is in bad faith, and

28  constitutes a breach of the implied covenant of good faith and fair dealing by denying

15

COMPLAINT

1 de Monet and Palisades the benefits to which they are entitled under the Consulting
2 Agreement.

3      87.    Presidential's breach of the covenant of good faith and fair dealing has
4 proximately and directly caused damages to Plaintiffs in an amount to be proven at
5 trial.

6 <u>FIFTH CAUSE OF ACTION – INTENTIONAL INTERFERENCE WITH</u>
7 <u>CONTRACTUAL RELATIONS (MOU)</u>
8 (Against Serge Kasarda, Seventieth Street Asset Management LLC, and Does 1-20)

9      88.    Plaintiffs repeat, reallege, and incorporate by reference, as if fully set
10 forth herein, the allegations of paragraphs 1-65.

11      89.    On or about December 9, 2016, Palisades, First Capital, and
12 Presidential entered into the MOU.

13      90.    Mr. Kasarda and Seventieth Street Asset Management LLC were aware
14 of the MOU between Palisades, First Capital, and Presidential. The MOU provided,
15 among other things, that de Monet and Palisades would provide services in order to
16 close the transaction.

17      91.    The MOU also provided that upon transfer of 66% of the Township 9
18 Ownership entity interests owned by First Capital to Presidential, (a) de Monet
19 would lead Presidential as Chairman and CEO and build out his leadership team
20 with full-time personnel; (b) Presidential would execute employment agreements
21 with de Monet and certain other Palisades staff and executives, with market
22 compensation in the estimated amounts set forth in the MOU (including a salary to
23 de Monet in the amount of $400,000 per year for four years, until gross assets
24 reached $500,000,000 at which point the salary could be higher); and (c) Presidential
25 would provide additional compensation to Plaintiffs in the form of stock grants,
26 including an initial grant of $5 million, an additional $1.25 million in each of the first
27 four years, and additional grants totaling up to $20 million from year 1 through year
28 4 tied to performance measures.

92.     In other words, de Monet and Palisades were to receive approximately $31,600,000 million in consideration, including salary and stock grants, over four years. That amount reflected the complexity, difficulty, and skill required to close the transaction and for Plaintiffs to assume management of Presidential and successfully manage its newly acquired assets.

93.     Despite knowledge of the MOU, Mr. Kasarda and Seventieth Street Asset Management LLC cut de Monet and Palisades out of the deal and replaced de Monet and Palisades with Mr. Kasarda and Seventieth Street Asset Management LLC, respectively.

94.     Mr. Kasarda and Seventieth Street Asset Management LLC acted with the intention of replacing de Monet and Palisades with Mr. Kasarda and Seventieth Street Asset Management LLC, thereby disrupting the MOU.

95.     Mr. Kasarda and Seventieth Street Asset Management LLC's actions resulted in a breach of the MOU as set forth above.

96.     As a result of Mr. Kasarda and Seventieth Street Asset Management LLC's wrongful acts, Plaintiffs have been proximately and directly damaged in an amount of no less than $31,600,000 plus prejudgment interest.

<u>SIXTH CAUSE OF ACTION – INTENTIONAL INTERFERENCE WITH</u>

<u>CONTRACTUAL RELATIONS (CONSULTING AGREEMENT)</u>

(Against First Capital, Suneet Singal, Serge Kasarda, Seventieth Street Asset Management LLC, and Does 1-20)

97.     Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of paragraphs 1-65.

98.     On or about December 8, 2016, Palisades and Presidential entered into the Consulting Agreement.

99.     First Capital, Mr. Singal, Mr. Kasarda, and Seventieth Street Asset Management LLC were aware of the Consulting Agreement between Palisades and

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 · Facsimile: 310.746.4499

1  Presidential. The Consulting Agreement provided, among other things, that de

2  Monet and Palisades would provide services in order to close the transaction.

3       100.   Presidential agreed to pay Palisades $100,000 per month on the first of

4  each month. Presidential also agreed to reimburse Palisades for reasonable and

5  necessary expenses.

6       101.   Despite knowledge of the Consulting Agreement, First Capital, Mr.

7  Singal, Mr. Kasarda, and Seventieth Street Asset Management LLC cut de Monet

8  and Palisades out of the deal and replaced de Monet and Palisades with Mr. Kasarda

9  and Seventieth Street Asset Management LLC, respectively.

10       102.   First Capital, Mr. Singal, Mr. Kasarda, and Seventieth Street Asset

11  Management LLC acted with the intention of replacing de Monet and Palisades with

12  Mr. Kasarda and Seventieth Street Asset Management LLC, respectively, thereby

13  disrupting the Consulting Agreement.

14       103.   First Capital, Mr. Singal, Mr. Kasarda, and Seventieth Street Asset

15  Management LLC's actions resulted in a breach of the Consulting Agreement as set

16  forth above.

17       104.   As a result of First Capital, Mr. Singal, Mr. Kasarda, and Seventieth

18  Street Asset Management LLC's wrongful acts, Plaintiffs have been proximately and

19  directly damaged in an amount of no less than $502,889.21 plus prejudgment

20  interest.

21  SEVENTH CAUSE OF ACTION – COMMON COUNT: SERVICES RENDERED

22  (Against First Capital, Presidential and Does 1-20)

23       105.   Plaintiffs repeat, reallege, and incorporate by reference, as if fully set

24  forth herein, the allegations of paragraphs 1-65.

25       106.   As set forth above, First Capital and Presidential requested that

26  Plaintiffs provide consulting and advisory services in order to assist First Capital and

27  Presidential in closing the transaction. Among other things, Presidential sought

28  Plaintiffs' assistance in integrating properties identified in the Interest Contribution

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

1  Agreement, preparing a private placement memorandum and the private placement

2  of an offering for up to $100 million in preferred stock, listing Presidential on a

3  national securities exchange, and performing services related to asset growth plans

4  for Presidential and raising additional capital.

5       107.   First Capital sought advisory services from Plaintiffs, as described

6  above and set forth in the MOU.

7       108.   Plaintiffs performed the services that First Capital and Presidential

8  asked them to perform.

9       109.   Neither First Capital nor Presidential have paid Plaintiffs for the

10  services they asked Plaintiffs to perform, and that Plaintiffs actually performed.

11       110.   The reasonable value of the services Plaintiffs performed, but have not

12  been compensated for, will be proven at trial.

13       111.   Despite demands for payment, neither First Capital nor Presidential

14  have tendered payment and have continued to refuse payment for services rendered

15  by Plaintiffs.

16  EIGHTH CAUSE OF ACTION – UNJUST ENRICHMENT (PRESIDENTIAL)

17                (Against Presidential and Does 1-20)

18       112.   Plaintiffs repeat, reallege, and incorporate by reference, as if fully set

19  forth herein, the allegations of paragraphs 1-65.

20       113.   Plaintiffs expended substantial time, energy, and money on

21  Presidential's behalf.  Among other things, Plaintiffs assisted Presidential in an

22  effort to close the transaction with First Capital, prepared a private placement

23  memorandum regarding an offering for up to $100 million in preferred stock,

24  provided services in connection with listing Presidential on a national securities

25  exchange, and performed services related to asset growth plans for Presidential and

26  raising capital.

27       114.   Through the course of performing these services, Plaintiffs incurred

28  expenses that have not been reimbursed.

115.   Presidential has gained substantial benefits from the work Plaintiffs performed on Presidential's behalf.  Plaintiffs have not been repaid for the benefits Plaintiffs conferred upon Presidential through services performed.

116.   Plaintiffs seek an award of all benefits that have been conferred on Presidential which unjustly enriched Presidential in an amount to be proven at trial.

### NINTH CAUSE OF ACTION – UNJUST ENRICHMENT (FIRST CAPITAL)

(Against First Capital and Does 1-20)

117.   Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of paragraphs 1-65.

118.   Plaintiffs expended substantial time, energy, and money on First Capital's behalf as set forth above to assist First Capital in closing the transaction with Presidential.

119.   Through the course of performing these services, Plaintiffs incurred expenses that have not been reimbursed.

120.   First Capital has gained substantial benefits from the work Plaintiffs performed on First Capital's behalf.  Plaintiffs have not been repaid for the benefits Plaintiffs conferred upon First Capital through services performed.

121.   Plaintiffs seek an award of all benefits that have been conferred on First Capital which unjustly enriched First Capital in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendants as follows:

   a.  Damages in an amount to be proven at trial, but at least $32,102,889.21;

   b.  Attorney's fees;

   c.  Costs;

/ / /

/ / /

/ / /

/ / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

d.  Prejudgment interest; and

e.  Such other and further relief as the Court deems equitable and just.

DATED: April 14, 2017               ELKINS KALT WEINTRAUB REUBEN
                                    GARTSIDE LLP


                                    By: _____
                                        Eric J. Lorenzini
                                        Attorneys for Plaintiffs
                                        Palisades Capital Realty Advisors LLC and
                                        Joaquin Charles de Monet

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
2049 Century Park East, Suite 2700
Los Angeles, California 90067-3202
Telephone: 310.746.4400 • Facsimile: 310.746.4499

21
COMPLAINT